(December 17, 1991)

■ In the Matter of JOSEPH A. LONGO, Appellant, v CITY OF NEW YORK et al., Respondents.—Order and judgment (one paper) of the Supreme Court, New York County (Martin Evans, J.), entered April 17, 1990, dismissing the petition to annul respondent's determination denying the petitioner an accident disability retirement pension, is affirmed, without costs.

The very narrow issue presented in this CPLR article 78 proceeding is whether the respondent's Medical Board acted without basis when it concluded that petitioner had not shown that his disability was caused by his having tripped upon torn carpeting at his place of work. As noted in the dissent, the workplace accident to which the petitioner attributes his disability occurred on March 10, 1979. Petitioner was examined at the time and found to have sustained soft tissue trauma in his right knee for which Tylenol was prescribed. Following a subsequent examination by a Transit Authority physician, the petitioner was ordered to resume work on a full-duty basis. Petitioner did not seek medical attention for his right knee for another five months and it was not until November 2, 1979 that an arthrographic procedure was performed upon the recommendation of the orthopedic specialist to whom the petitioner had been referred by his personal physician. The arthrogram failed to indicate any abnormality in the petitioner's knee. Two months after the arthrographic procedure, an arthroscopy was performed. The arthroscopy indicated that the petitioner had a torn medial meniscus and reactive degenerative changes of adjacent areas of the tibia and femur.

Respondent's Medical Board initially recommended denying petitioner's application for an accident disability retirement pension because it was of the view that the petitioner's return to full duty for a five month period following the March 10, 1979 accident itself was sufficient to discount the accident as the cause of the petitioner's disability. On article 78 review, however, the matter was remanded back to the respondent for re-examination as the reviewing court did not consider the five month delay to constitute a sufficient ground for the Board's conclusion. The court noted that the petitioner's disability might have been the result of a gradual deterioration in the condition of his knee, and that the five month interval during which the petitioner worked and did not find it necessary to seek medical attention should, therefore, not have been treated by the Board as dispositive of whether the March 10, 1979 accident was the cause of the disability. After this court affirmed the order remanding the matter back to the respondent [109 AD2d 1110], respondent's Medical Board conducted a re-examination of the petitioner's claim. The re-examination included a review of the reports of the physicians who had treated the petitioner subsequent to August 1979 and who were of the opinion that petitioner's disability was traceable to the March 10, 1979 accident. The Board, however, adhered to its prior determination, stating, "Mr. Longo is disabled due to derangement of the right knee, status-post menisectomy due to a torn cartilage. There is no evidence showing when Mr. Longo sustained the tear of this cartilage. With reasonable medical certainty, the Medical Board declares that Mr. Longo could not have worked for five months, even in the Communications Unit, with so little discomfort that medical care was not more urgently needed. *Furthermore, it is quite likely that this tear may have occurred between November 2, 1979 and January 3, 1980 since the arthorgram [sic] disclosed no cartilage tear on November 2, 1979, two months before the knee surgery disclosed one"* (emphasis added).

Preliminarily, it should be clear from the above-cited statement of the Medical Board that it did not, as the dissent suggests, base its conclusion that the cartilage tear likely occurred after the arthrogram solely upon the supposition that a person so injured could not have worked for five months without greater discomfort and would have earlier sought medical attention. Indeed, it is clear that there was an additional ground for the Board's conclusion, namely, the November 2, 1979 arthrogram itself which failed to disclose any abnormality in the petitioner's knee.

It is, of course, possible to hypothesize that the arthrographic procedure failed to detect the abnormality eventually disclosed by the arthroscopy performed two months later. But it is also possible to suppose, as the Board did, that the normal arthrogram accurately reflected the condition of the petitioner's knee as of November 2, 1979, and that the subsequently detected injury must, therefore, have occurred sometime after the arthrogram. While we might be disposed based upon our reading of the record to credit the first of these hypotheses, that is not something we are at liberty to do in the present context. The only question properly before us is whether the Board's determination was supported by some credible evidence *(Matter of Drayson v Board of Trustees of Police Pension Fund,* 37 AD2d 378, *affd* 32 NY2d 852). As we think it clear that the normal November 2, 1979 arthrogram does constitute some credible evidence that the petitioner's disability is not traceable to the March, 1979 accident, we see no way of avoiding the conclusion that the respondent's determination must be permitted to stand. Indeed, the arthrographic findings in conjunction with the fact that the petitioner worked and did not seek medical attention for some five months after the accident would seem to render the respondent's determination unassailable given the very limited function of judicial review in cases of this nature. Concur—Murphy, P. J., Rosenberger and Kassal, JJ.

Ellerin and Rubin, JJ., dissent in a memorandum by Rubin, J., as follows: Petitioner, a Transit Police Officer, sustained injury to his right knee on March 10, 1979, in a fall upon catching his foot in a tear in an office rug. It is undisputed that this injury occurred in the line of duty while petitioner was working in the Communications Unit where it was his job to assign officers to various details, a function he had performed since 1972. An examination of the knee conducted at the emergency room of Long Island College Hospital revealed a soft tissue trauma for which Tylenol was prescribed. A Transit Authority doctor found the injury to be a contusion of the right knee and ordered petitioner to report to his full-duty assignment. The petitioner continued working but after a lapse of time the pain became increasingly severe requiring medical attention on August 18, 1979. An examination by his personal physician resulted in a diagnosis of "tendonitis right knee, possible cartilage injury". He was thereafter referred to an orthopedic surgeon who diagnosed his injury as an internal derangement of the right knee and a possible torn medial meniscus. He was advised that an arthrogram would be neces-

sary if his symptoms did not subside. An arthrogram was ultimately performed on November 2, 1979 which indicated no abnormality. However, an orthopedic specialist advised petitioner that a surgical arthroscopic procedure was necessary to determine the source of the pain in his knee. This procedure was performed by Dr. Bert S. Horowitz on January 2, 1980 and revealed a torn medial meniscus and reactive degenerative changes of adjacent areas of the tibia and femur. Petitioner was placed on sick leave from January 2 to April 14, 1980.

Upon his return to work, petitioner was given a restricted duty assignment. On April 16, 1980, while changing his clothes in the locker room, petitioner reported that his leg buckled, causing him to fall. Respondent's surgical consultant found only some swelling and restriction of the right knee, but Dr. Panzarella, who supervised petitioner's physical therapy, noted that motion of the left knee was painful and limited. It is undisputed that the locker room fall constitutes a line of duty injury.

Petitioner applied for accidental disability retirement on October 16, 1980. The Medical Board found him disabled but denied the application on the ground that petitioner's condition was not the natural and proximate result of the fall on March 10, 1979, which finding was accepted by respondent's Board of Trustees. In a prior CPLR article 78 proceeding challenging their determination, Supreme Court held that the record was insufficient to permit decision on the question of whether a rational basis existed for the Board's finding. This court affirmed, without opinion, remanding the matter to the Medical Board for specific findings on causation and disability (Matter of Longo v City of New York, 109 AD2d 1110). Upon re-examination, the Medical Board determined that the tearing of the medial meniscus "quite likely" occurred after the arthrogram on November 2, 1979. The Medical Board based this conclusion on their opinion that petitioner could not have continued to work for a five-month period without experiencing sufficient discomfort so as to require him to seek medical care.

The reasoning of the Medical Board is devoid of any support in the record and, therefore, entirely speculative. Petitioner's assignment as an operating officer in the Communications Unit is clearly a desk job which would not place any great demands on an injured knee. There is nothing to suggest that, between the initial injury on March 10, 1979, and the diagnosis resulting from the surgical arthroscopic procedure of Janu-

ary 2, 1980, petitioner sustained any other injury to the right knee which could have caused the medial meniscus tear. A report from Dr. Horowitz confirms this conclusion. The January, 1980 diagnosis is entirely consistent with a progressively disabling condition and includes a finding of "reactive degeneration of the adjacent surface of the tibia as well as ridging of the lateral condyle of the femur and considerable synovian reaction." In short, there is nothing in the record to controvert the conclusion drawn by Dr. Horowitz that "[petitioner's] course was completely reasonable for a meniscal tear and it is my feeling, with reasonable medical certainty, that the pathology found in January of 1980 was the direct result of the injury of March 10, 1979." The assertion that, during the two months between the arthrogram and the arthroscopic procedure (which petitioner had been advised to undergo at the time of the arthrogram), there was another injury which resulted in the medial meniscus tear is pure speculation. While the determination of the Medical Board is ordinarily entitled to great weight, it must be based upon facts in the record *(Matter of Christian v New York City Employees' Retirement Sys.,* 56 NY2d 841) and not, as here, upon mere supposition.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Martin Evans, J.), entered April 17, 1990, which dismissed the petition brought pursuant to CPLR 7803 (3) and 7804 (g) to annul, as arbitrary and capricious, the determination of respondent dated July 2, 1985 denying petitioner an accident disability retirement pension, should be reversed, on the law, without costs, the petition granted and respondent directed to place petitioner on accidental disability retirement status.